**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MICHAEL VALDEZ,

     Plaintiff - Appellee,

v.

PETER DERRICK, III, in his individual
capacity; JOHN MACDONALD, in his
individual capacity; ROBERT MOTYKA,
JR., in his individual capacity; JEFF
MOTZ, in his individual capacity; KARL
ROLLER, in his individual capacity,

     Defendants - Appellants,

and

CITY OF DENVER, a municipality,

     Defendant.

No. 16-1038
(D.C. No. 1:15-CV-00109-RPM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Five police officers, the individual defendants in this case, appeal the district court's denial of their motion to dismiss, based on qualified immunity, five of the six claims asserted against them by Michael Valdez under 42 U.S.C. §§ 1983, 1985, and 1986. We exercise jurisdiction under 28 U.S.C. § 1291 and reverse.

## I. Background

The following facts are alleged in the amended complaint or conceded by Valdez. Valdez accepted a ride in a pickup truck from an acquaintance. Two other passengers rode in the cab and another one rode in the back. Unbeknownst to Valdez, police were searching for the truck in connection with criminal activity that occurred earlier that day. While Valdez was riding in the truck, police began chasing it. After the truck crashed, the driver and two of the passengers exchanged gunfire with the officers and fled, while Valdez and the sole female passenger remained inside the truck. Later, Valdez and the female passenger emerged from the truck with their hands raised and lay down close to the truck. At no point did Valdez shoot at or threaten the officers, and he did not possess a weapon. For unexplained reasons, the officers shot Valdez in the back and finger. After he was taken to a hospital and treated for his injuries, he was arrested and taken to jail. He was subsequently charged with attempted murder and other charges related to his encounter with the officers as well as charges related to the criminal activity that occurred earlier that day. Unable to post bail, Valdez spent two months in jail before all of the charges were dismissed and he was released.

Valdez sued the officers for unlawful and excessive use of force, malicious prosecution, manufacture of inculpatory evidence, unreasonable seizure, false imprisonment, and conspiracy to violate his civil rights.[1] The gist of his argument as it pertains to this appeal is that he "was an innocent bystander to crimes being committed by those around him" and that the officers lacked probable cause to believe he had committed any crime. Aplee. Br. at 8. He argues that they "actively participated in his arrest and prosecution, and conspired with each other to perpetuate the violation of [his] constitutional rights" by "manufacturing and withholding evidence to cover up for the fact that they shot an innocent man." *Id.* at 7, 8.

The officers sought dismissal of all but the use-of-force claim, arguing that they were entitled to qualified immunity. The district court denied their motion, finding that "[t]here is nothing to connect Valdez to the shooting and the [officers] present at the scene had no basis for believing that Valdez had shot at them."[2] Aplt. App. at 139. The court further found that "in [the] full context of what is alleged in the amended complaint it is reasonable to believe that the [officers] were participating in a conspiracy among the police to cover up their unlawful conduct by pursuing criminal charges against Valdez." *Id.*

---

[1] His claims against the City and County of Denver are not part of this appeal.

[2] In making its determinations, the district court relied in part on two statements of probable cause which were attached to the officers' motion, finding that the statements "support the plaintiff's case." Aplt. App. at 139. For the purpose of this appeal, we do not consider the statements or reach the issue of whether it was proper for the district court to have considered them in ruling on the officers' motion.

The officers argue that the district court erred by concluding that the allegations in the amended complaint were sufficient to overcome their qualified immunity defense. We agree.

## II. Analysis

We review de novo the district court's denial of a motion to dismiss based on qualified immunity when that ruling turns on an issue of law. *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013). "In reviewing a motion to dismiss, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011) (ellipsis and internal quotation marks omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson*, 715 F.3d at 852 (internal quotation marks omitted). But "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

To state a claim for relief that is plausible on its face and to overcome the officers' defense of qualified immunity, Valdez "must allege facts sufficient to show (assuming they are true) that the [officers] plausibly violated [his] constitutional rights, and that those rights were clearly established at the time." *Robbins*, 519 F.3d

4

at 1249. We opt to resolve this matter based on the clearly-established prong of the qualified immunity standard. *See Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013) ("As the 'clearly established' prong resolves this case, we begin with it."). "[T]o show that a right is clearly established, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Callahan v. Unified Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1027 (10th Cir. 2015) (internal quotation marks omitted). "The contours of the law must be sufficiently drawn so that a reasonable officer knows when he is acting outside of those lines . . . ." *Id.* at 1029.

Although it is clear that an officer must have probable cause to make a warrantless arrest, Valdez has not shown that the officers' conduct underlying the five claims at issue in this appeal violated his clearly established rights. "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal quotation marks omitted). In *Pringle*, the Supreme Court concluded that an officer had probable cause to arrest all three occupants of a vehicle after none of them would provide any information about the cocaine and large amount of rolled-up cash the officer found in the vehicle. *Id.* at 371-72. The Court reasoned that the requirement for "individualized suspicion" was satisfied because passengers in a vehicle "will

5

often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." *Id.* at 373 (internal quotation marks omitted).

In *Callahan*, 806 F.3d at 1029, we held that the application of *Pringle* was "debatable" in a case where all of the members of a specialized police unit were arrested even though the arresting officers had probable cause to believe that only some of them had committed thefts. We determined that no clearly established law prohibits an officer from arresting "an entire small group when he knows some unidentifiable members, if not all members, of that group have committed a crime." *Id.* at 1028. The arresting officers were entitled to qualified immunity because there was no clear standard for applying *Pringle* beyond its specific facts and the officers could reasonably assume that it applied in the situation at hand. *Id.* at 1029. "Before we hold officers liable, we must ensure that they were fairly put on notice that their actions were unlawful." *Id.*

Here, it is beyond debate that the officers had probable cause to believe that one or more occupants of the truck had committed crimes. Even accepting Valdez's assertions that he did not have a weapon or pose a threat to the officers when he emerged from the truck, an objectively reasonable police officer in those circumstances could have found probable cause to arrest him based on a belief that he was engaged in a common enterprise with the other occupants of the truck. *See Pringle*, 540 U.S. at 373. In light of *Pringle* and *Callahan*, the officers could not have been on notice that arresting Valdez would be a violation of his clearly

6

established rights. *See Callahan*, 806 F.3d at 1029. "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Valdez's allegations fail to establish that the officers could not have reasonably concluded, based on the facts and circumstances within their knowledge, that they had probable cause to arrest Valdez. *See id.* at 228. And Valdez has not shown that the law was so clearly established that an objectively reasonable officer in their position would have known his actions were improper. *See Callahan*, 806 F.3d at 1027.

Valdez's failure to plausibly allege that the officers lacked probable cause to believe he committed a crime unravels each of his claims related to his arrest and prosecution. To the extent he alleges the charges against him violated his rights, he also fails to provide specific factual allegations about how the officers participated in filing those charges or what any of them said or did that violated his rights. In asserting a § 1983 claim, it is important "that the complaint make clear exactly *who* is alleged to have done *what* to *whom*." *Robbins*, 519 F.3d at 1250. Valdez's allegations do not meet this standard.

Valdez's allegations are also insufficient to show that the officers were linked in a conspiracy to deprive him of his rights. To state a claim for conspiracy, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). No such facts are alleged in the amended complaint. "[W]holly

7

conclusory" allegations of conspiracy cannot survive dismissal. *Scott v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000).

## III.  Conclusion

We reverse the district court's denial of qualified immunity to the officers with respect to Valdez's claims for malicious prosecution, manufacture of inculpatory evidence, unreasonable seizure, false imprisonment, and conspiracy.  The case is remanded for further proceedings consistent with this order and judgment.

Entered for the Court


Bobby R. Baldock
Circuit Judge